*507 OPINION.
Steenhagen :
The petitioner rests its claim to a deduction for 1919 upon the ground that at the beginning of that year a debt of *508 $420,789.07 was owing to it from the National Shawmut Bank and that this debt was during that year ascertained to be worthless and charged off. Revenue Act of 1918, section 234 (a) (5). The theory argued is that the Roxbury stock was bought by Willett, Soars & Co., the Partnership; that the petitioner was under no obligation in respect thereof; that the payments by petitioner were wrongful payments related to the stock purchase; that the Partnership was worthless as a source of recovery; that the Bank was liable to petitioner for having improperly recognized the checks and paid on them; and that the release of the Bank in 1919 by petitioner through either the release of the Partnership or the specific release of the Bank established the worthlessness of the debt; hence, that the debt was properly charged off and the deduction is established.
The premises for this argument are to a large extent inferences which in our opinion are no more justifiable than contrary inferences, and which are not to be accepted. Where the detailed facts are available to petitioner, he has no right to rely on an inference. Here the facts are beclouded and it is not possible to say that the legal situations postulated by petitioner are necessarily true. Did Willett, Sears & Co. buy the Roxbiiry stock for itself or for the Felt Co.? Knowlton thought he was selling to the Partnership, but this is not controlling here. What did the Partnership and the petitioner arrange and understand between themselves? Certainly, as manifested by their own conduct, the transaction was one inuring to the petitioner. In the absence of direct evidence on this, there is justification for the belief that the petitioner had rights in the stock and an obligation to pay for it. If so, its check to the Bank wTas not open to challenge and the Bank Avas never indebted.
Was the Partnership liable to petitioner, and, if so, was it ever unable to pay? The evidence shows that the original account with the Partnership was in excess of the $400,000 item and that to this extent the account was reduced by the bookkeeper and the Roxbury account substituted. We are asked to assume that the Partnership’s composition with creditors was predicated on insolvency and that the terms of the composition agreement were a conclusive demonstration of worthlessness. This latter could be inferred only from the 15 per cent settlement and the release. The release, however, was based on a consideration which is undisclosed. This may jjiossibly be due to the fact that the Partnership received some of the pledged stock when the first payment was made and this in turn may have been turned over to petitioner, who actually made the payment, as a consideration for the release.
But if the Bank really was liable at any time to the petitioner, and the release of the Partnership was a release of the Bank, this was a voluntary relinquishment of the Bank’s liability and not an *509 ascertainment of -worthlessness. This is likewise true of the specific direct release of the Bank’s liability given later. The Bank was solvent and if petitioner was a creditor, it can not say it ascertained the debt to be worthless by voluntarily releasing the Bank from its liability.
From the evidence, it must be held that the respondent correctly refused the deduction of $426,789.07 in 1919. This disposes of any issue the petitioner might otherwise have had as to its invested capital.

Judgment will he entered for the resyondent.